IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WOUND CARE CENTERS, INC. and | ) | |
|---|---|---|
| DIVERSIFIED CLINICAL SERVICES, INC. | ) | |
| | ) | |
| Plaintiffs | ) | Civil No. 10-336 |
| v. | ) | |
| | ) | |
| DAVID CATALANE; RODNEY | ) | |
| KOSANOVICH; PHILIP GEORGEVICH; | ) | |
| PAUL WILLIS; RICK SCANLAN, | ) | |
| ROBERT YELLENIK; SAMINA NASEER; | ) | |
| VIDHU SHARMA; and OHIO VALLEY | ) | |
| GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

Pending before the court is a motion to amend findings of fact and conclusions of law, pursuant to Rule 52(b) of the Federal Rules of Civil Procedure (the "Motion" (ECF No. 67)) filed by plaintiffs Wound Care Centers, Inc. ("WCCI"), and Diversified Clinical Services, Inc. ("Diversified" and together with WCCI, "plaintiffs" or "WCCS"). Upon review of the Motion (ECF No. 67), the brief in support (ECF No. 68), the response (ECF No. 70), filed by defendants David Catalane, Rodney Kosanovich, Philip Georgevich, Paul Willis, Rick Scanlan, Robert Yellenik, Samina Naseer, Vidhu Sharma (the "physician defendants"),[1] and Ohio Valley General

---

[1] Physician defendants initially included Peter Dickinson ("Dickinson"), Gene Battistella ("Battistella"), and Michael Notte ("Notte"). On July 15, 2010, Dickinson filed a stipulation of dismissal with prejudice. (ECF No. 36.) On May 25, 2010, the court noted there would also be a consensual resolution with respect to Battistella and Notte. (See Hr'g Tr. 3, May 24, 2010 (ECF No. 64).)

Hospital ("OVGH " and together with physician defendants, "defendants"), and the record of the instant case, the court will deny the Motion for the reasons set forth below.

I.  **Background**

On February 8, 2011, this court issued a memorandum opinion and order, (the "Memorandum Opinion" (ECF No. 65)), denying in its entirety plaintiffs' motion for a preliminary injunction (ECF No. 3) against defendants. Wound Care Centers, Inc. v. Catalane, No. 10-336, 2011 WL 553875, at *27 (W.D. Pa. Feb. 8, 2011). In their motion for a preliminary injunction, plaintiffs moved this court to enjoin, for a period of one year within twenty miles of OVGH, the physician defendants from:

> a) establishing, operating, contracting with or entering into any business relationship with a facility or company which has as its primary business the treatment of chronic non-healing wounds, b) employing, hiring, or contracting for services with any employee or former employee of WCCS, and c) exchanging or contracting with any person or entity to provide, or contracting with any competitor of WCCS that provides comprehensive wound care management services of the kind provided by WCCS; and 2) from disclosing, publishing, or disseminating confidential information as defined in the relevant physician affiliation agreements ("PAAs")[];

and to enjoin OVGH from:

> 1) employing any physician defendant directly or through a similar facility that has as its primary business the treatment of chronic non-healing wounds; and 2) disclosing, publishing, or disseminating confidential information as defined in the PAAs, to include causing the employees of OVGH to disclose, publish or disseminate the same confidential information.

Wound Care Centers, Inc., 2011 WL 553875, at *2.

In rejecting plaintiffs' motion for injunctive relief, the court made findings of fact and conclusions of law[2] which are challenged in the instant Motion. In weighing the need for injunctive relief and deriving the corresponding facts and conclusions of law, the court conducted a four-part analysis as contemplated by Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010), and other applicable case law. The court concluded that plaintiffs did not make the requisite showing to justify the remedy sought. Wound Care Centers, Inc., 2011 WL 553875, at *27.

Under the Bimbo Bakeries analysis the court evaluated: (1) plaintiffs' likelihood of success on the merits; (2) whether plaintiffs would suffer irreparable harm if the injunction was denied; (3) if greater harm would be caused to the nonmoving party by granting the injunction; and (4) if public interest favors the injunction. Id. at **13-14 (citing Bimbo Bakeries, 613 F.3d at 109). Specifically, the court found that plaintiffs failed to meet their burden of proof on the first two prongs of the Bimbo Bakeries analysis, and that the remaining two prongs of the analysis weighed against the plaintiffs. Id. at *27.

On March 7, 2011, plaintiffs filed the instant Motion requesting the court to amend its findings of fact and conclusions of law with respect to the court's denial of injunctive relief. Plaintiffs request the court to make the following specific additional findings:

> (a) In part, the purpose behind the restrictive covenants contained within the PAA's [sic] is to protect the goodwill and patient referral basis created and generated by the Plaintiffs through its operation of the Center.
>
> (b) The restrictions within the PAA's [sic] are necessary and legitimate to protect the goodwill and patient referral base created

---

[2] For the purposes of the pending motion to amend findings of fact and conclusions of law, the court assumes the parties' familiarity with its prior memorandum opinion and order (the "Memorandum Opinion"), Wound Care Centers, Inc. v. Catalane, Civ. A. No. 10-336, 2011 WL 553875 (W.D. Pa. Feb. 28, 2011) (ECF No. 65). The operative facts will be discussed in this opinion only to the extent they are directly relevant to the pending Motion. (ECF No. 67.)

3

and generated by the Plaintiffs as the Plaintiffs continue to
manage, among others, Wound Care Centers at Jefferson Health
Services, East Liverpool City Hospital, and St. Elizabeth
Boardman Health Center.

(c) WCCS has a legitimate business interest in the enforcement
of the PAA's [sic] despite the closure of the Center at OVGH as
WCCS continues to operate existing Centers and open new Centers
within the protected zone.

(Pl.s' Br. at Ex. A (ECF No. 68-1).)

In response, defendants made three arguments: (1) plaintiffs comprehensively fail to meet the governing standard of decision; (2) plaintiffs' motion has no effect on the underlying fallacy of their position; and (3) plaintiffs' arguments have no merit. (Def.s' Resp. 2-4 (ECF No. 70).)

For the reasons set forth below, the court declines to make any such additional findings or amend its prior findings of fact and conclusions of law and plaintiffs' instant Motion will be denied.

## II. Standard of Review

Federal Rule of Civil Procedure 52(b) provides:

**(b) Amended or Additional Findings.** On a party's motion filed
no later than 28 days after the entry of judgment, the court may
amend its findings - or make additional findings - and may amend
the judgment accordingly. . . .

FED R. CIV. P. 52(b).

The primary purpose of a Rule 52(b) motion is to enable an appellate court to draw from the record a "correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and the judgment entered thereon." 9C CHARLES WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2582 at 352-53 (3d. 2008). A Rule 52(b) motion is not a vehicle for relitigation of issues previously adjudicated

> A party who failed to prove his strongest case is not entitled to a second opportunity to litigate a point, to present evidence that was available but not previously offered, or to advance new theories by moving to amend a particular finding of fact or a conclusion of law. It is said that the motion must raise questions of substance by seeking reconsideration of material findings of fact or conclusions of law *to prevent manifest injustice or reflect newly discovered evidence*.

Id. at 353-56 (emphasis added and footnotes omitted); see Edwards v. Wyatt, Civ. No. 01-1333, 2007 WL 136687, at *1 (E.D. Pa. Jan. 8, 2007), vacated in part on other grounds, 330 F. App'x 342 (3d Cir. 2009); Great Am. Ins. Co. v. Honeywell Int'l, Inc., Civ. No. 05-857, 2009 WL 5064478, at *1 (W.D. Pa. Dec. 17, 2009) (citing Gutierrez v. Ashcroft, 289 F. Supp.2d 555, 561 (D. N.J. 2003)).

A showing of such manifest injustice or newly discovered evidence is similar to the standards required of a Rule 59(e) motion. Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc., 762 F. Supp.2d 710, 717 n.4 (D. Del. 2011) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). In North River Insurance Co., the court set forth the standard for Rule 59(e) motions:

> A proper motion to alter or amend judgment "must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice."

N. River Ins. Co., 52 F.3d at 1218 (quoting Natural Res. Def. Council v. U.S. Envtl. Prot. Agency, 705 F. Supp. 698, 702 (D. D.C. 1989)).

In order to make modifications to findings of fact or conclusions of law, the challenged facts or conclusions must be "basic or essential." United States v. Crescent Amusement Co., 323 U.S. 173, 180 (1944). In conformity with the Rule 59(e) standard described above, amending findings of fact requires: (1) the availability of new evidence not available previously, or (2) the

need to correct a clear error of law or prevent manifest injustice. See N. River Ins. Co. at 1218.[3] Under the same standard, amending conclusions of law thus requires a showing of: (1) intervening change of law or (2) need to correct a clear error of law or manifest injustice. See N. River Ins. Co., 52 F.3d at 1218.

"Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly . . . . [A] motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly." Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

### III. Discussion

Plaintiffs "respectfully submit that the Court's Opinion contained manifest errors of law and fact which must be corrected." (Pl.s' Mot. 1 (ECF No. 67).) Plaintiffs set forth three specific additional conclusions of law[4] which must be made in order to correct this allegedly manifest error: (a) that the purpose of the restrictive covenants at issue in the preliminary injunction is partially to protect the goodwill of plaintiffs; (b) that the restrictions of those covenants are necessary and legitimate to protect this goodwill; and (c) that WCCS has a

---

[3] Rule 52(a)(6) of the Federal Rules of Civil Procedure explicitly describes the *appellate* standard of review for amending *findings of fact* as that of clear error. A district court is not bound to follow this same standard over its own findings of fact. Nonetheless, the language in Federal Rules of Civil Procedure is not inconsistent with the standards applied here. FED. R. CIV. P. 52(a)(6); see Sears, Roebuck, & Co. v. Johnson, 219 F.2d 590, 591 (3d Cir. 1955).

[4] It is not clear whether plaintiffs are requesting the court to make additional conclusions of law or instead make additional findings of fact; plaintiffs' proposed order is captioned: **ADDITIONAL FINDINGS OF FACT**, although the text of plaintiff's respective proposed order states: "Plaintiffs move the Court to *find and/or make the following additional Findings of Fact and Conclusions of Law* . . .." (Pl.s' Br. at Ex. A (ECF No. 68-1).) The substance of the proposed amendments appear to be more accurately addressed in the form of conclusions of law than as findings of facts. The distinction, however, in not dispositive for purposes of ruling on the instant motion to amend.

legitimate business interest in the enforcement of the restrictive covenants despite the closure of OVGH. (Pl.s' Br. at Ex. A (ECF No. 68-1).)

Defendants argue correctly that plaintiffs' arguments "are simply a rehash of those already considered by the Court and rejected" and cannot meet the appropriate legal standard required for a successful Rule 52(b) motion. (Def.s' Resp. 1-2 (ECF No. 70).) Defendants contend that even under the appropriate legal standard, plaintiffs did not provide this court with legal authority defining a manifest error of law or fact. (Def.s' Resp. 2 (ECF No. 70).) Defendants characterize plaintiffs' arguments as mere disagreement with this court's ruling, and not manifest error of law or fact. (Def.s' Resp. 3 (ECF No. 70).)

The parties agree that the appropriate legal standard governing a Rule 52(b) motion requires a showing of manifest injustice of error in law or fact, newly discovered evidence not previously available, or an intervening change in controlling law. None of these situations are present here. Plaintiffs did not make any showing of newly discovered evidence not previously available or any intervening change in controlling law; rather, only disagreement with the application of the controlling law itself. Plaintiffs' primary argument is that each case relied upon by the court in denying the preliminary injunction can be distinguished on the facts from the instant case. (Pl.s' Br. 3 (ECF No. 68).) The court knows that Gibson v. Eberle, 762 P.2d 777, 779 (Colo. App. 1988), is "non-controlling" (Pl.s' Br. 3 (ECF No. 68)), for purposes of this court's adjudication of the instant case under Pennsylvania law. Gibson's rationale, however, is persuasive. Consideration of persuasive decisions of courts in other jurisdictions, however, does

not rise to the level of manifest injustice, as alleged by plaintiffs and required to grant a Rule 52(b) motion.[5]

Plaintiffs' three additional proposed findings of fact and conclusions of law are inapposite to the Gibson decision which this court found persuasive. Plaintiffs misstate the issues relevant to the court's findings of fact and conclusions of law when they argue:

> Similar to a franchisor protecting its franchise, WCCS has an interest in expansion and a current presence within that market to protect, and competition from the Defendants within that twenty mile radius would lead to significant harm for WCCS. . .. If plaintiff is unable to enforce this restrictive covenant against these defendants, the values of all of its franchises are lowered.

(Pl.s' Br. at 6 (ECF No. 68) (citations omitted).)

In support of this proposition plaintiff relies upon decisions interpreting facts pursuant to an express franchise agreement. See Maaco Franchising, Inc. v. Augustin, Civ. A. No. 09-4548, 2010 WL 1644278 (E.D. Pa. Apr. 20, 2010); Athlete's Foot Marketing Associates, Inc. v. Zell Investment, Inc., No. Civ. A. 00-186, 2000 WL 426186 (W.D. Pa. Feb. 17, 2000); Rita's Water Ice Franchise Corp. v. DBI Investment Corp., No. 96-306, 1996 WL 165518 (E.D. Pa. Apr. 8, 1996). The circumstances in those cases involved former franchisees who continued to operate businesses in a substantially similar manner following termination of a franchise agreement – and are inapplicable to the instant case. Here, because plaintiffs and defendants are not parties to an express franchise agreement, plaintiffs' argument that the values of Wound Care Centers at other locations would be lowered if plaintiffs are unable to enforce the restrictive covenants in issue is misplaced. Notably, pursuant to a contractual agreement entered into by WCCS and

---

[5] The court was not able to find any case law, either in the Court of Appeals for the Third Circuit or otherwise, supporting the view that the mere citation to the persuasive rationale of decisions rendered by courts in other jurisdictions constitutes manifest injustice.

OVGH on December 1, 1991, OVGH had agreed not to compete in specialty wound care treatment programs for two years following termination of that agreement. On December 1, 2005, OVGH and plaintiffs entered into a new agreement (the "MSA") that contained non-compete provisions for only the term of the MSA. The MSA terminated on April 19, 2010. Wound Care Centers, Inc., 2011 WL 553875, at **3-6. Assuming for the sake of argument that an analogy to franchise agreements can be made here, the relevant "franchisee" would be OVGH and OVGH clearly could directly compete in the specialty wound care treatment market after April 19, 2010 and it did so. Under those circumstances, the franchise analogy fails.

Plaintiffs' franchise protection argument ignores the court's findings of fact with respect to the contributions and goodwill attributed to the practicing physicians in plaintiffs' success of the center operated at OVGH. Wound Care Centers, Inc., 2011 WL 553875, at *21 ¶ 20. ("[T]he goodwill and the patient referral base in issue cannot be solely attributed to WCCS.") In conducting its analysis under the Bimbo Bakeries standard, the court already considered plaintiffs' argument that irreparable harm would befall plaintiffs—including to their goodwill—if the preliminary injunction were denied, and found that no such harm would occur. See Id. at **24-25. Because plaintiffs do not cite any intervening change in controlling law, new evidence not available previously, or manifest injustice relevant to the court's findings of fact and conclusions of law, they do not meet the appropriate legal standard to amend the court's findings of fact and conclusions of law.

Similarly, plaintiffs inaccurately contend that one of the court's finding of fact is inconsistent with a subsequent conclusion of law. (See Pl.'s Br. 3 n.3 (ECF No. 68).) In finding facts with respect to WCCS's efforts to protect its business interests, the court stated:

9

> [w]ithin a fifty-mile radius of OVGH, WCCS manages, among
> others, wound care centers at Jefferson Health Services
> ("Jefferson"), East Liverpool City Hospital ("East Liverpool"), and
> St. Elizabeth Boardman Health Center ("St. Elizabeth").

Id. at *13 ¶ 67. In concluding, as a matter of law, that the restrictive covenants in issue are not enforceable under the third factor of the Bimbo Bakeries standard – granting relief will not result in even greater harm to the nonmoving party – the court reasoned:

> WCCS did not show intent to reestablish an alternative wound care
> center at a location separate and apart from OVGH that would
> directly compete with OVGH within a twenty-mile radius at
> OVGH.

Id. at *25 ¶ 48. This finding of fact does not contradict the court's subsequent conclusion of law. The court found evidence of record to support a finding of fact that plaintiffs previously established other wound care centers within a fifty-mile radius of OVGH. That fact does invalidate the court's conclusion that plaintiffs did not show intent to reestablish a directly competitive alternative wound care center within a twenty-mile radius from OVGH.

**IV.    Conclusion**

Plaintiffs were previously afforded a full and fair opportunity to make their case and litigate the issue whether injunctive relief is warranted under the facts of the instant case. To reopen this previously adjudicated issue in the form of a Rule 52(b) motion is not appropriate under the circumstances. Plaintiffs failed to show in the Motion any manifest injustice[6] of either law or fact, any newly discovered evidence not previously available, or any intervening change

---

[6] The court, in its Memorandum Opinion denying injunctive relief, addressed the issue whether irreparable harm would befall plaintiffs if their motion for preliminary injunction were denied, and specifically concluded that irreparable harm would not occur. See Wound Care Centers, Inc., 2011 WL 553875, at *27.

in controlling law.  Accordingly, plaintiffs' Motion is without merit and will be denied in its entirety.

**ORDER**

AND NOW, this 9th day of August, 2011, upon careful consideration of the motion to amend findings of fact and conclusions of law, pursuant to Rule 52(b) of the Federal Rules of Civil Procedure (ECF No. 67), filed by plaintiffs Wound Care Centers, Inc. and Diversified Clinical Services, Inc., the brief in support (ECF No. 68), the response of defendants David Catalane, Rodney Kosanovich, Philip Georgevich, Paul Willis, Rick Scanlan, Robert Yellenik, Samina Naseer, Vidhu Sharma and Ohio Valley General Hospital (ECF No. 70), and the record of the instant case, the Motion is **DENIED.**

It is **SO ORDERED**.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge